UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ADAM TIJERINA,

Petitioner,

v. Case No. 2:25-cv-1080-SPC-KRH

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent.

---

**OPINION AND ORDER**

This is a habeas corpus case filed pursuant to 28 U.S.C. § 2254 by Adam Tijerina, a Florida state prisoner acting *pro se*. (Doc. 1). The Respondent has filed a limited response on behalf of the State, moving to dismiss the petition as untimely. (Doc. 8). Tijerina has filed a reply in opposition. (Doc. 9). The Court agrees with the State and will thus dismiss the petition.

**Calculating the Limitations Period Absent Equitable Tolling**

Title 28 U.S.C. § 2254 authorizes a person in custody pursuant to the judgment of a state court to petition for a writ of habeas corpus challenging their confinement as violative of the United States Constitution. Such petitions are subject to a one-year statute of limitations, 28 U.S.C. § 2244(d)(1). Often, including in this case, the limitations period runs from "the date on

which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." § 2244(d)(1)(A).

However, the limitations period is subject to two kinds of tolling. The first is statutory tolling under 28 U.S.C. § 2244(d)(2), which provides, "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward [the limitations period of § 2244(d)(1)]." The second is equitable tolling, which may apply when a habeas petitioner shows he has been pursuing his rights diligently and that some extraordinary circumstance prevented timely filing. *See Holland v. Florida*, 560 U.S. 631, 649 (2010).

This case presents two main issues. One involves determining when Tijerina is considered to have filed his federal habeas petition. That turns on the "prison mailbox rule," under which a filing by a *pro se* prisoner is deemed filed as of the date it is presented to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *see also* Rule 3(d), Rules Governing § 2254 Habeas Cases. The other issue relates to whether Tijerina might be entitled to a period of equitable tolling sufficient to render his petition timely.

Tijerina was convicted at trial of second-degree murder in the Circuit Court of Lee County, Florida. He was sentenced to life imprisonment. The Florida Second District Court of Appeal (DCA) affirmed *per curiam* without a

written opinion on January 26, 2011. He did not seek further direct review. For purposes of § 2244(d)(1)(A), his judgment became final on April 26, 2011, upon the expiration of the 90-day period in which he might have timely petitioned for certiorari in the Supreme Court of the United States. *See Bates v. Sec'y, Dep't of Corr.*, 964 F.3d 1326, 1329 (11th Cir. 2020). Absent tolling of the limitations period, Tijerina was due to file his § 2254 petition by April 26, 2012. *See Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir. 2008) (holding that the limitations period is calculated using the "anniversary method").

The State acknowledges, however, that Tijerina is entitled to at least some tolling, under § 2244(d)(2). First, the state concedes he is entitled to such tolling based on a state habeas corpus petition he filed in the DCA. *See Moore v. Sec'y, Fla. Dep't of Corr.*, 762 F. App'x 610, 619 (11th Cir. 2019). Exactly when Tijerina filed that petition is unclear. The DCA docketed it on May 9, 2011, but Tijerina filed it while in custody and acting *pro se*. Florida courts also abide by a prison mailbox rule, so the petition would be deemed filed, for purposes of both Florida law and § 2244(d)(2), when Tijerina delivered the petition to prison officials for mailing. *See Newsome v. Sec'y, Fla. Dep't of Corr.*, No. 21-12535, 2022 WL 2526597, at *1 (11th Cir. July 7, 2022). A copy of the state habeas petition is not in the record. Tijerina acknowledged in a motion for rehearing in the DCA that he filed the state habeas petition on May 3, 2011,

although he now alleges in his federal habeas petition that he filed the state habeas petition sometime in "April 2011."

Because it does not alter the result, the Court assumes Tijerina filed his state habeas petition on or before April 26, 2011. That would toll the § 2244(d)(1) limitations period with no time elapsed. The DCA summarily denied the petition without a written opinion on June 14, 2011, and denied rehearing on August 26, 2011. Tijerina was not eligible for, and did not seek, review of the DCA's decision in the Florida Supreme Court. As a result, the federal limitations period began running as of the date of the denial of rehearing. *See Moore*, 762 F. App'x at 620.

On January 12, 2012, after 139 days of untolled time, Tijerina filed a *pro se* motion in the state trial court under Rule 3.800 of the Florida Rules of Criminal Procedure. The State acknowledges that motion also tolled the limitations period under § 2244(d)(2). *See Ford v. Moore*, 296 F.3d 1035, 1036, 1040 (11th Cir. 2002). The trial court denied the motion, and the DCA affirmed *per curiam* without opinion. The mandate issued on July 18, 2013, which would ordinarily mark the end of statutory tolling. *See Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000).

However, on February 20, 2013, while Tijerina's appeal of the denial of his Rule 3.800(a) motion was still pending, he filed another motion in the state trial court, this time through retained counsel, pursuant to Rule 3.850, Fla. R.

Crim. P. The State recognizes that motion tolled the limitations period, too. *See Day v. Crosby*, 391 F.3d 1192, 1192–93 (11th Cir. 2004). The trial court denied the motion, and the DCA affirmed *per curiam* without opinion on August 19, 2015. The mandate issued September 15, 2015. Accordingly, the overlapping proceedings on Tijerina's motions under Rules 3.800(a) and 3.850 yielded a continuous period of statutory tolling from January 12, 2012, to September 15, 2015.[1]

The § 2244(d)(1) limitations period then began running again with 226 days left. Tijerina does not claim any other tolling under § 2244(d)(2). Therefore, absent equitable tolling, the limitations period expired on April 28, 2016. It is undisputed Tijerina did not file a federal habeas petition before then.

Indeed, Tijerina's instant petition was not docketed by the Clerk of this Court until November 21, 2025. The State argues the petition should be deemed filed on or about that date, which would make it untimely by more than nine years. The State contends the petition is thus due to be dismissed.

---

[1] Tijerina also filed two other state habeas petitions in the DCA, both of which were dismissed as successive. The State argues neither was "properly filed" as required to toll the limitations period under § 2244(d)(2). However, those petitions were pending from August 15, 2012, to October 3, 2012, and from January 3, 2013, to February 14, 2013, respectively. Therefore, even if they could toll the limitations period, such tolling would overlap with tolling the State concedes for the proceedings on Tijerina's motions under Rule 3.800 and Rule 3.850. Thus, the Court need not address whether those state habeas petitions might have independently tolled the federal limitations period.

Tijerina, however, counters that his petition is timely. He makes two main arguments, both of which the State hotly disputes. First, Tijerina contends his *pro se* § 2254 petition should be deemed filed *much* earlier, on October 20, 2016. He relies on the prison mailbox rule, highlighting that such is the date he has affixed to the petition next to his signature. Also, enclosed with his habeas petition is a document captioned, "Notice to the Clerk." It includes a "Verification" in which Tijerina declares, under penalty of perjury, "[O]n October 20, 2016, I placed by original Petition for a Writ of Habeas Corpus, with sufficient first-class postage affixed, into the institutional mailing system at Florida State Prison for delivery to the United States District Court for the Middle District of Florida."

Second, Tijerina claims he is entitled to equitable tolling of the limitations period under *Holland*, on two theories. In one, he contends prison authorities interfered with his counsel's attempts to communicate with him, thereby delaying by more than eight months his learning that the DCA had denied his appeal from the denial of his Rule 3.850 motion. Tijerina also argues that he is entitled to equitable tolling on the basis that he delivered his federal habeas petition to prison authorities on October 20, 2016, and that any failure on the part of prison officials, the United States Postal Service, or employees of this Court to deliver and docket the petition after that was an extraordinary circumstance beyond his control.

## Application of the Prison Mailbox Rule

The Court first considers the application of the prison mailbox rule. Under it, a federal habeas petition filed by a *pro se* prisoner is deemed filed as of the date the petition is delivered to prison authorities for mailing. *Taylor v. Williams*, 528 F.3d 847, 849 n.3 (11th Cir. 2008). The prison mailbox rule is premised on the recognition that a *pro se* prisoner is dependent on the mail to file court documents and that he loses control of a filing once it is delivered to prison authorities. *See Houston*, 487 U.S. at 275.

The prison mailbox rule is also reflected in Rule 3(d) of the Rules Governing § 2254 Habeas Cases, which provides:

> A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

At the outset, the Court notes that Tijerina appears to assume that if his federal petition were deemed filed as of October 20, 2016, under the prison mailbox rule, that would itself render his petition timely. However, that is not the case. Rather, based on the Court's calculation that the limitations period would have otherwise expired on April 28, 2016, Tijerina would still have to establish almost six months of equitable tolling. Even so, the Court considers

the prison mailbox issue first because if it applies as the State contends, Tijerina's petition would be deemed filed in November 2025, meaning he would have to establish more than nine years of equitable tolling.

The prison mailbox rule may establish the date of filing for a document never received by the district court. *See Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006). The application of the rule in such a case does not depend on a *pro se* prisoner's diligence after delivering the document to prison authorities for mailing. *See id.* Thus, if it is determined the prisoner did, in fact, deliver a document to prison authorities on a given date, that establishes the date of filing even though (1) the original document was never received by the court and (2) the prisoner does not follow up with court officials within a reasonable time after failing to receive confirmation of receipt or disposition of the filing. *See id.*

However, whether and when a prisoner delivered a filing to prison authorities for mailing are questions of fact for the district court. *Jeffries v. United States*, 748 F.3d 1310, 1313 (11th Cir. 2014). Courts in this circuit are to "assume, absent evidence to the contrary, that a prisoner delivered a filing to prison authorities on the date that he signed it." *Daniels v. United States*, 809 F.3d 588, 589 (11th Cir. 2015) (cleaned up). Thus, "[t]he burden is on the Government to prove [a filing] was delivered to prison authorities on a date other than the date the prisoner signed it." *Jeffries*, 748 F.3d at 1314. For

example, "prison logs or other records" may be evidence that could contradict the signing date. *Id.*. However, they are not the only way the Government can meet its burden. *Id.* at 1315; *see also Natson v. United States*, 494 F. App'x 3, 5 (11th Cir. 2012). Rather, the "district court may take into account any and all relevant circumstances … in deciding whether [a filing] was delivered to the prison authorities." *Allen*, 471 F.3d at 1198. Such may include "any lack of diligence on the part of [the prisoner] in following up in a manner that would be expected of a reasonable person in his circumstances." *Id.*; *see also Jeffries*, 748 F.3d at 1315–16. The court may also consider the credibility of the prisoner and other witnesses. *See Jeffries*, 748 F.3d at 1315–16.

The Court agrees with Tijerina that he has raised a presumption that he delivered his § 2254 petition to authorities for mailing on October 20, 2016. His petition itself contains a signature with that date. The State argues that alone is not enough. But even assuming that is true, the petition is accompanied by the "Notice to the Clerk." It contains a declaration by Tijerina, made under penalty of perjury, "that on October 20, 2016, [he] placed [his] original Petition for a Writ of Habeas Corpus, with sufficient first-class postage affixed, into the institutional mailing system at Florida State Prison for delivery to [this Court]." Rule 3(d) of the § 2254 Habeas Rules provides that "timely filing may be shown" by such a declaration. That is sufficient to place the burden of proof on the State to show Tijerina did not deliver his habeas

petition to prison authorities on the date he claims. *See Bullock v. United States*, 655 F. App'x 739, 741 & n.2 (11th Cir. 2016); *see also Allen*, 471 F.3d at 1198–99 (opining that a declaration in compliance with materially indistinguishable provisions in Fed. R. App. P. 4(c)(1) would put the burden of proof on the government regarding the prisoner's claim of when he delivered a notice of appeal, never received by the court, to prison authorities). However, such a declaration is not "entirely controlling—as a matter of law—for the question of timeliness, when the substance of the declaration is challenged by other parties and other evidence." *Natson*, 494 F. App'x at 5 n.3.

The State has not submitted mail logs or other records from any prison or jail to rebut Tijerina's claim that he delivered his federal habeas petition to officials on October 20, 2016. Indeed, the State admits that the facility where Tijerina was confined at that time—the Madison County Jail in Madison, Florida, not a "Florida State Prison"—does not have records of outgoing mail. Frankly, given the length of time since Tijerina claims to have delivered his petition to authorities for mailing, the Court is not surprised by the lack of logs or other records. But as explained below, the Court finds from other evidence that Tijerina did not, in fact, deliver his federal habeas petition to authorities for mailing on October 20, 2016.

To start with, it is apparent that the physical copy of the habeas petition docketed by the Clerk was not delivered to prison authorities on October 20,

2016, the date Tijerina has placed by his signature on the petition. The document has no stamp or other institutional markings to indicate when it was received by prison officials or in what facility. The petition was mailed in an envelope with a postmark of November 18, 2025, and was docketed on November 21, 2025. "Though the extended delay … does not impose a prima facie bar on the application of the prison mailbox rule, the Court, in weighing conflicting evidence of timeliness, examines an otherwise unsubstantiated date on a [filing] more critically as the period of alleged delay expands." *United States v. Buck*, No. 1:09-CR-432, 2011 WL 4073878, at *2 (N.D. Ohio Sept. 13, 2011). That the Court received the petition more than nine years after it was dated itself calls into question any presumption that it was presented to prison authorities when signed. *See Blanton v. Sec'y, Dep't of Corr.*, No. 19-12604-G, 2019 WL 7568237, at *2 (11th Cir. Dec. 26, 2019) (district court's finding that prisoner did not deliver § 2254 habeas petition to prison authorities on date the petition was signed was supported by the fact that the district court did not receive the petition until more than three years later). Further, the mailing envelope containing the petition also enclosed the Notice to the Clerk. That document bears Tijerina's dated signature, a "certificate of mailing," and an institutional stamp all indicating it was delivered on November 17, 2025, to officials at the prison where Tijerina was then housed, South Bay Correctional Facility in South Bay, Florida. It stands to reason Tijerina also tendered the

docketed copy of his accompanying habeas petition to such officials on that date, not to officials at an entirely different facility, the Madison County Jail, some nine years earlier.

Under *Allen*, even if the petition docketed on November 21, 2025, was not itself presented to prison authorities on October 20, 2016, Tijerina might still establish that he delivered an original habeas petition to prison authorities on that earlier date, even if never received by the Court. However, it further appears that the petition docketed on November 21, 2025, is not even a duplicate of one Tijerina might have delivered to authorities on October 20, 2016. Tijerina has dated the petition "October 20, 2016," and he declares in the Notice to the Clerk, under penalty of perjury, that "the attached Petition for a Writ of Habeas Corpus," *i.e.*, the one enclosed in the same envelope, "was timely filed" on that same date. However, the docketed petition lists Tijerina's place of confinement as South Bay Correctional Facility, where he was held in November 2025. Again, in October 2016, he was confined at the Madison County Jail. That discrepancy suggests that Tijerina's dated signature on the petition, representing that he "executed" that paper on October 20, 2016, is backdated and deceptive, if not perjurious. *See Francois v. United States*, No. 18-60130-CR, 2021 WL 5088835, at *5 (S.D. Fla. Oct. 13, 2021) (finding "later-filed documentary evidence" to be "untrustworthy and unreliable," a "thinly veiled attempt" to convince the court of the date he claimed to have delivered

his motion under 28 U.S.C. § 2255 to prison authorities), *report and recommendation adopted*, 2021 WL 5085353 (S.D. Fla. Nov. 2, 2021); *Williams v. United States*, No. CR614-001, 2016 WL 3194368, at *2 (S.D. Ga. June 6, 2016) (noting "how easy it is for a petitioner to simply lie about when he placed his § 2255 motion in his prison's mail system," prompting a warning against perjury). Further, that Tijerina was being held in October 2016 at a county jail, not a state prison facility, also taints the credibility of his declaration in the Notice to the Clerk that he placed his original habeas petition "into the institutional mailing system at Florida State Prison" on October 20, 2016. *See also generally Rivers v. United States*, 777 F.3d 1306, 1317–18 (11th Cir. 2015) (acknowledging the maxim "*falsus in uno, falsus in omnibus*—the principle that a witness who willfully testified falsely as to any material matter may be discredited generally").

Finally, Tijerina's own account of events belies that he exercised reasonable diligence or otherwise proceeded as one would expect had he tendered a federal habeas petition for filing on October 20, 2016. By that time, Tijerina was a relatively experienced *pro se* litigator. From his prison cell, he had filed and pursued three state habeas corpus petitions in the DCA, a Rule 3.800 motion in the trial court, and an appeal from the denial of that motion to the DCA, all without an attorney. The records of those proceedings show he was capable of formulating and presenting legal arguments and of responding

to court orders and State filings. Those records also support a finding that Tijerina would have understood what to expect in terms of judicial procedures and timelines, generally speaking. Nevertheless, he acknowledges he did nothing to ascertain the status of his federal habeas petition for at least two full years after supposedly delivering it to prison authorities, despite receiving nothing from this Court in the interim. Rather, Tijerina claims he first tried to check on the status by sending a "Notice of Inquiry" to this Court on or about October 25, 2018. Tijerina does not present a copy of that document, a response to it, or any other evidence corroborating that he mailed it. But even assuming he did send it, the length of the delay would still suggest a lack of reasonable diligence. *See Blanton*, 2019 WL 7568237, at *2 (finding that prisoner did not deliver habeas petition to prison authorities on date he claimed was supported by the fact that he did not inquire with the court on the status of his petition for three years); *cf. Drew v. Department of Corr.*, 297 F.3d 1278, 1288 (11th Cir. 2002) (prisoner failed to establish equitable tolling of the § 2244(d) limitations period due to lack of diligence where he did not inquire of the court as to the status of his case for 16 months after it had been filed), *overruled on other grounds as recognized by Jones v. Sec'y, Fla. Dep't of Corr.*, 906 F.3d 1339, 1351 (11th Cir. 2018). Tijerina further admits he then waited about another *seven years* after that to do *anything* else. Namely, he sent what he characterizes as a second "Notice of Inquiry" to this Court on or about September 16, 2025,

asking about his habeas corpus case filed on October 20, 2016. The Clerk responded in a letter dated October 6, 2025, advising Tijerina that this Court's records show no habeas case, or any other action, listing him as a party. Tijerina's conduct thus exhibits a lack of diligence and is inconsistent with a belief that he had tendered a federal habeas petition to officials for filing on October 20, 2016.

Based on the foregoing, the Court finds Tijerina's claim that he delivered a § 2254 habeas petition to authorities for mailing on October 20, 2016, not credible. The Court further finds that Tijerina did not, in fact, make such a delivery. Instead, the Court finds he tendered his federal habeas petition to officials at the South Bay Correctional Facility on November 17, 2025, along with his Notice to the Clerk. Under the prison mailbox rule, that is the date his § 2254 habeas petition is deemed filed. Therefore, Tijerina's petition is untimely by more than nine years unless he can establish a sufficient period of equitable tolling. The Court now turns to that issue.

**Equitable Tolling**

A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Holland*, 560 U.S. 649. "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 653 (quotes

and cite omitted). As for extraordinary circumstances, it is a petitioner's burden to prove them, and "[m]ere conclusory allegations are insufficient." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011) (cite omitted). He also must "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *Id.* at 1267.

Tijerina first contends he is entitled to equitable tolling on the basis that prison officials prevented him from promptly learning the DCA had rejected his appeal from the denial of his Rule 3.850 motion on August 19, 2015. Again, it was with the DCA's issuance of the mandate on September 16, 2015, that the § 2244(d) limitations period began running again. Tijerina's attorney on the appeal, Daniel Tibbitt, claims he sent a letter to Tijerina on August 21, 2015, advising that the DCA had affirmed the denial of his Rule 3.850 motion. Tibbitt alleges he also contacted authorities at the prison and scheduled a conference call with Tijerina for August 24, 2015. Tibbitt claims, however, that when his office called in at the appointed time, prison officials said Tijerina refused the call. Tibbitt further alleges that his letter of August 21, 2015, was returned unopened on September 3, 2015, with the notation "Refused" on the outside of the envelope. Based on those purported refusals, Tibbitt says he assumed Tijerina had already heard about the denial of his appeal from another source and was upset with Tibbitt. Therefore, Tibbitt says, he did not pursue further communication with Tijerina at that time.

Tijerina, however, insists prison officials withheld Tibbitt's letter of August 21, 2015, and sent it back without giving it to him. He similarly claims such officials blocked him from learning about the conference call. Tijerina thus denies having refused Tibbitt's letter or the call in August 2015 and that, as a result, he remained unaware that his appeal related to the Rule 3.850 motion had already been denied. Rather, Tijerina contends he did not learn of the DCA's denial of that appeal until he was able to speak with Tibbitt on another conference call on May 4, 2016.

It is assumed the circumstances alleged by Tijerina and Tibbitt establish a period of equitable tolling. *Cf. Knight v. Schofield*, 292 F.3d 709, 711 (11th Cir. 2002) (petitioner entitled to equitable tolling where state supreme court sent notice of denial of discretionary review in the petitioner's state habeas case to the wrong person, and petitioner exhibited due diligence to determine the case status). However, such might extend no longer than the period Tijerina was delayed in learning his appeal was denied. At the very most, that would be from August 19, 2015, when the DCA issued its *per curiam* affirmance, to May 4, 2016, when Tijerina acknowledges learning of that disposition. *See Knight*, 292 F.3d at 711–12. That would be a period of 260 days, extending the limitations period from April 28, 2016, to January 13, 2017. However, as explained previously, the Court has determined Tijerina did not present his federal habeas petition to prison authorities for mailing

until November 17, 2025. Therefore, his petition would remain untimely by more than eight years.

Tijerina's other theory in support of equitable tolling is based on his claim that he delivered his federal habeas petition to authorities for mailing on October 20, 2016. Tijerina argues that once he tendered the petition, whether it was mailed out, delivered to the Court, and docketed were all matters beyond his control. He characterizes the fact that his petition was not filed at that time as an extraordinary circumstance that prevented timely filing.

But, again, this Court has found Tijerina did not, in fact, present his federal habeas petition to prison authorities on October 20, 2016. Rather, the Court finds he did not do so until November 17, 2025. Therefore, any failure of other parties to deliver and docket that filing in November 2025 did not prevent timely filing. Further, Tijerina's testimony is that, despite having received nothing from the Court since purportedly delivering the petition to authorities on October 20, 2016, he did not follow up for more than two years when he sent a Notice of Inquiry to this Court on or about October 25, 2018. Assuming he made that inquiry, it still would have come more than 21 months after the limitations period would have expired even with equitable tolling for the delay in Tijerina learning of the denial of his appeal, on January 13, 2017. The Court finds that Tijerina's failure to timely follow up with the Court not

only belies his claim that he delivered his petition to authorities for mailing on October 20, 2016, in the first place but also shows a lack of due diligence in the enforcement of his rights for purposes of equitable tolling. *See Drew*, 297 F.3d at 1288.

Tijerina is not entitled to equitable tolling based on either of his proposed theories. Accordingly, his federal habeas petition remains time barred by at least eight years and is due to be dismissed.[2]

**Denial of a Certificate of Appealability**

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). "A [COA] may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 335–

[2] The statute of limitations may be overcome by a convincing showing of actual innocence. *See McQuiggin v. Perkins*, 569 U.S. 383 (2013). Tijerina makes no such claim or showing.

36 (2003) (citations omitted). Tijerina has not made the requisite showing here and may not have a certificate of appealability on any ground of his Petition.

Accordingly, it is now

**ORDERED:**

1. Petitioner Adam Tijerina's habeas corpus petition (Doc. 1) is **DISMISSED** as barred by the statute of limitations, 28 U.S.C. § 2244(d)(1).
2. A certificate of appealability under 28 U.S.C. § 2253(c) is **DENIED**.
3. The Clerk is **DIRECTED** to terminate all pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on October 20, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-3
Copies: All Counsel and Parties of Record